*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0180P (6th Cir.)
File Name: 00a0180p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

<table>
<tr><td>

GERALD M. BROWN; NICK D. ANDERSON,<br>
     *Plaintiffs-Appellants,*<br><br>
     *v.*<br><br>
CITY OF NIOTA, TENNESSEE;<br>
L. S. LEE; EVA BRAKEBILL;<br>
ALAN WATKINS; JOEL PARHAM,<br>
     *Defendants-Appellees.*

</td><td>



No. 99-5749

</td></tr>
</table>

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 98-00064—Curtis L. Collier, District Judge.

Argued: April 27, 2000

Decided and Filed: May 31, 2000

Before: KENNEDY, SILER, and BATCHELDER, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Peter Alliman, WHITE, CARSON, & ALLIMAN, Madisonville, Tennessee, for Appellants. H. Chris Trew, HIGGINS, BIDDLE, CHESTER & TREW, Athens, Tennessee, for Appellees. **ON BRIEF:** Peter Alliman, WHITE, CARSON, & ALLIMAN, Madisonville, Tennessee, for Appellants. H. Chris Trew, HIGGINS, BIDDLE, CHESTER & TREW, Athens, Tennessee, William A. Buckley, Jr., Athens, Tennessee, for Appellees.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge. Plaintiffs, Gerald M. Brown and Nick D. Anderson, appeal the district court's decision to grant summary judgment in favor of the defendants, City of Niota, et al., in this section 1983 action. On appeal plaintiffs raise two issues: (1) whether the board of commissioners' promulgation of employee rules and regulations created a property interest in continued employment with the City of Niota entitling the plaintiffs to notice and a hearing prior to termination; and (2) whether the plaintiffs' filing of this lawsuit before the defendants received actual notice of the plaintiffs' desire for a name-clearing hearing bars the plaintiffs from claiming that the defendants deprived them of their liberty interests without due process of law. We affirm the decision of the district court.

## I. Facts

Plaintiff Brown was employed as a full-time police officer with the City of Niota beginning in October, 1994, and plaintiff Anderson was employed as a part-time reserve officer beginning in November, 1993. During the course of their employment with the city, the plaintiffs became involved

plaintiffs' claim that they were deprived of liberty without due process of law.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

process of law because they had not been denied a name-clearing hearing by the city.

The plaintiffs mailed a letter to the mayor of Niota on February 12, 1998, requesting the mayor's response to their demand for a name-clearing hearing by February 16, 1998. It is undisputed that the mayor did not receive the letter until February 17, 1998. By that date, the plaintiffs, apparently assuming that no response should be interpreted as a denial, filed this action in federal court. In their complaint, they alleged that they had suffered liberty deprivations without due process. To support these allegations the plaintiffs alleged that the statements at the board meeting were false and defamatory and that they requested a name-clearing hearing which was denied. Once a plaintiff has satisfied the five elements of the *Ludwig* test, he is entitled to a name-clearing hearing "when plaintiff has made a request for such a hearing." *Ludwig*, 123 F.3d at 410. In *Ludwig*, the court found that the plaintiff's letter had not clearly stated the plaintiff's desire for a name-clearing hearing; therefore, the plaintiff's request for relief was denied because he could not show that he had been denied a name-clearing hearing. *Id.* at 411. Although plaintiffs' request was clearly stated in their letter, this letter was not received by the mayor until February 17, 1998. The plaintiffs filed their complaint that same day. As of the filing of the complaint, the plaintiffs could not show that they had been denied a name-clearing hearing because they could not show that the defendants were aware of their desire for this hearing.[3] Because plaintiffs must request a name-clearing hearing and be denied this hearing before they have suffered a deprivation of their liberty interest without due process of law we believe the district court was correct in granting the defendant's summary judgment motion on the

---

[3]There is no evidence in the record to indicate that the plaintiffs ever renewed their request for a name-clearing hearing and were denied this hearing by the city.

in an investigation of a resident named Michael Cardin. On December 23, 1997, Cardin confronted Brown and in the course of this confrontation, Brown pushed Cardin. On December 29, 1997, Brown was contacted by the chief of police, defendant Parham, and informed that he was no longer a city employee.

On January 12, 1998, the Niota board of commissioners held a board meeting at which they discussed Brown's employment. Defendant Lee made a motion to dismiss Brown from his employment with the police department. Lee stated that a vote of the commissioners was needed to make the employment decision legal. The City of Niota had promulgated employee rules and regulations which stated that a city employee could be dismissed only by a vote of the board of commissioners. After a heated discussion, in which the shoving incident was mentioned as the primary reason for dismissal, the commissioners voted 3 to 2 to dismiss Brown. They also agreed to award him back pay from December 29, 1997 until January 12, 1998. The notice of separation stated that he was dismissed for unsatisfactory behavior. Immediately after this termination decision was made, defendant Lee made a motion to dismiss Anderson with the stated reason being "conflict of interest." Anderson was employed by both the Fire and Police Departments at that time. Also, his wife was a commissioner on the board. Defendant Lee stated that the conflict was due to his wife's being on the board, but when the mayor assumed that the basis for the motion was Anderson's employment with both the police and fire departments, none of the commissioners contradicted her. The motion to dismiss Anderson was passed by a 3 to 2 vote.

On February 12, 1998, plaintiffs mailed a letter to the mayor of Niota requesting a name-clearing hearing arising out of the comments made at the board meeting. The letter stated that the mayor should notify the plaintiffs of her decision by February 16, 1998. If the plaintiffs had not heard from the mayor by that date, the letter stated that they would take

further action. The mayor did not receive the letter until February 17, 1998. By that time, the plaintiffs had filed a complaint against the city and its commissioners and the mayor never responded to the plaintiffs' request for a hearing.[1] On May 5, 1998, the district court granted defendants' motion for summary judgment on all of plaintiffs' federal claims and declined to exercise its supplemental jurisdiction over plaintiffs' state law claims. The plaintiffs timely appealed.

## II. Discussion

Plaintiffs contend that the district court erred in finding that the defendants were entitled to summary judgment on the plaintiffs' claims that they were deprived of their property and liberty interests without due process of law by the termination proceedings conducted by the board of commissioners. This court reviews a district court's decision to grant summary judgment de novo. *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999). If there are no material factual disputes and the moving party is entitled to judgment as a matter of law, we will affirm the district court's judgment. *See* Fed. R. Civ. P. 56(c). In reviewing the defendants' summary judgment motion this court must construe the evidence and make all inferences in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### A. Property Interest

Plaintiffs argue that they had a property interest in continued employment with the City of Niota. Because the board dismissed them from employment without notice and an opportunity to be heard prior to the effective date of

---

[1]The plaintiffs' complaint was filed the same day that the mayor received the letter, March 17, 1998. The plaintiffs filed their complaint in the afternoon and the mayor did not receive her mail until the early evening.

that must be satisfied to establish that a plaintiff was deprived of a liberty interest entitling the plaintiff to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

123 F.3d at 410 (internal citations omitted). Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one. *Id.* Both plaintiffs argue that statements made by the commissioners during the board meeting infringed on their liberty interests in their reputations. In particular, plaintiff Brown points to statements regarding the shoving incident with Mike Cardin and the discussion of other undisclosed prior incidents, while plaintiff Anderson directs our attention to the board's statement he was involved in a conflict of interest. Plaintiffs contend that these statements "create[d] a false and defamatory impression . . . in connection with [their] termination." *Chilingirian,* 882 F.2d at 205. Assuming that the board's comments were stigmatizing and that the plaintiffs were entitled to a name-clearing hearing had one been denied, we still do not believe that the plaintiffs were deprived of their liberty interests without due process of law. Because the city did not receive notice of the plaintiffs' desire for a name-clearing hearing prior to the initiation of this lawsuit we believe that the district court was correct in granting summary judgment in favor of the defendants. At the time this complaint was filed, the plaintiffs had not suffered a deprivation of their liberty interest without due

termination they contend that they were denied due process of law. *See Board of Regents v. Roth*, 408 U.S. 564, 570 n.7, 92 S.Ct. 2701, 2705 n.7, 33 L.Ed.2d 548 (1972) ("Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing."). Plaintiffs base their property interest on an employee rule promulgated by the board. This rule states that "[a] city employee may be terminated for any just cause at the discretion of the board." Plaintiffs contend that this statement modified their employment at-will and established a contractual right to termination only for just cause.

To establish a claim for deprivation of property without due process of law, plaintiffs must establish that they had a property interest in continued employment with the city.

> "Whether a property interest exists is not determined by reference to the Constitution; rather, property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"

*Ludwig v. Board of Trustees*, 123 F.3d 404, 409 (6th Cir. 1997). Tennessee has long recognized the doctrine of employment at will, with the mutual right of either party to terminate such a relationship with or without cause. *See Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988). Plaintiffs acknowledge this doctrine, but argue that their at-will employment was modified by the city's promulgation of the rule governing the termination of city employees. "Under Tennessee law, what would otherwise be an at-will contract may be modified by specific language which evidences an intent to modify the existent employment contract." *Shelby v. Delta Airlines, Inc.*, 842 F. Supp. 999, 1006 (M.D. Tenn. 1993). Plaintiffs contend that the rule modifies their employment and prohibits termination without just cause.

If we were willing to accept the plaintiffs' argument that the board's rule on termination creates an employment contract between the city and the plaintiffs, the plaintiffs still cannot establish that they had a property interest in continued employment because this contract does not provide a definite term of employment. Tennessee courts have held that "[t]he law is well established in this state that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause." *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn. Ct. App. 1985); *see also Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn. Ct. App. 1985). While the *Reed* court found that the employee handbook created a contract and restricted the employer from terminating the employee without just cause, the handbook also created a contract for a definite time period. The employee handbook in *Reed* provided that the employment relationship would be for a term of one year to be renewed annually unless the employee voluntarily resigned or was terminated for just cause. 4 S.W.3d at 688. Because the plaintiffs have pointed to no rule or regulation that defines the duration of the contractual relationship between the city and its employees they have not rebutted the presumption that they were employees at will. The plaintiffs did not have a protected property interest in their continued employment with the city; therefore, we affirm the district court's decision to grant defendant's motion for summary judgment on plaintiffs' property interest claim.

### B. Liberty Interest

Plaintiffs also argue that they had a liberty interest that was violated by the defendants during the January 12, 1998, board meeting. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). A deprivation of any of those interests "must be accompanied by notice and an opportunity to be heard to refute any charges against that person." *Id.* In *Ludwig*, this Circuit identified five elements

While plaintiffs are not incorrect in arguing that at-will employment can be modified by language evidencing an intent on the part of the employer to modify the employment relationship, we do not agree with the plaintiffs that the employee rules and regulations promulgated by the Niota board evidence the city's intent to modify the employment relationship. We accept the plaintiffs' contention that these rules and regulations, like employee handbooks, could modify an employment relationship. Tennessee courts have "recognized that an employee handbook can become a part of an employment contract." *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997). "In order to constitute a contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions." *Id.* We do not believe the language of these rules and regulations shows the specific intent of the city to be bound by their terms.

In *Reed v. Alamo Rent-A-Car Inc.*, 4 S.W.3d 677, 688 (Tenn. Ct. App. 1999), the Tennessee Court of Appeals held that an employee handbook could modify an at-will employment agreement to require the employer to dismiss the employee only for just cause. Prior to this decision, Tennessee courts had held that terms of employment, like benefits, could become contractual through the operation of the employee handbook, but they had never held that an employee handbook could convert an at-will employment agreement into a protectible property interest. *See Gregory v. Hunt*, 24 F.3d 781, 785-87 (6th Cir. 1994) (discussing this phenomenon). The *Reed* court, however, limited its holding to those cases where the handbook contains "unequivocal language demonstrating [the employer's] intent to be bound by the handbook's provisions." In particular, the court stated "we can conceive of no clearer way for an employer to express its intent to be bound by a handbook's provisions than the employer's specific statement that the document represents the parties 'entire agreement of employment' and that the employer 'promises and agrees to abide by all its terms and conditions.'" 4 S.W.3d at 688. We believe that the

*Reed* court announced a high standard for establishing the existence of an employer's specific intent to be bound by the terms of an employee handbook and that the plaintiffs have not satisfied this standard.

The rule concerning employee termination contains the language that the board of commissioners "may" fire a employee for any just cause. The term "may" is permissive and suggests that there are other permissible means for terminating a city employee. In cases where Tennessee courts have found an employment contract to exist, the employee handbook contained the mandatory terms "shall" and "will." *See, eg., Williams v. Maremont Corp.*, 776 S.W.2d 78, 80-81 (Tenn. Ct. App. 1988) (finding the language "employees *will* be recalled in the order of seniority" to be binding) (emphasis added); *Hamby v. Gensco, Inc.*, 627 S.W.2d 373, 376 (Tenn. Ct. App. 1981) (holding that the statement contained in the employee handbook that "these *shall* be The Guaranteed Policies, Practices and Procedures" created a contractual relationship) (emphasis added). In addition, the rule identifies certain acts[2] as grounds for discharge; however, these acts are characterized as examples of grounds for discharge leading to the inference that they are not the exclusive bases for terminating city employees. In *Ogburn v. Gas and Water Dep't*, No. 01A01-9702-CH-00056, 1997 WL 528812, at *4-5 (Tenn. Ct. App. Aug. 27, 1997) (unpublished), the court held that the use of "may" in the city charter did not limit the city from following other methods to terminate employees. We believe that Tennessee courts would hold that the language of the board's employee rules and regulations does not evidence the clear intent to create a property interest in continued employment with the city.

---

[2]The policy statement provides:
A city employee may be terminated for any just cause at the discretion of the board. Examples are:
A. Failure to perform duties according to job description.
B. Failure to meet attendance requirements.