Jerry HADE, Plaintiff

v.

CITY OF FREMONT,
et al., Defendants

No. 01–7632.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 24, 2003.

Catherine H. Killam, Arnold & Caruso, Paul T. Belazis, Arnold & Caruso, R. Michael Frank, Nathan & Arnold, R. Kevin Greenfield, Arnold & Caruso, Toledo, OH, for Plaintiff.

Joan C. Szuberla, Teresa L. Grigsby, Theodore M. Rowen, Spengler Nathanson, Toledo, OH, for Defendants.

William F. Kolis, Jr., Wickens, Herzer, Pana, Cook & Batista, Avon, OH, Neutral.

## ORDER

CARR, District Judge.

This is a civil rights case by a former municipal employee against his former employer, the City of Fremont, Ohio, (the "City") and its Mayor, Terry Overmyer. Plaintiff asserts constitutional claims under 42 U.S.C. § 1983. Jurisdiction arises under 28 U.S.C. § 1331. Pending are cross motions for summary judgment. For the following reasons, plaintiff's motion shall be granted in part and denied in part. Defendants' motion shall be denied.

## BACKGROUND

Plaintiff was employed with the City almost twenty-nine years until terminated on August 6, 2001. At that time, plaintiff

was the City's Superintendent of the Water Treatment Plant.

On July 11, 2001, Sylvanita Mooring, an employee of an appraisal company in Atlanta, Georgia, investigated the City's Water Treatment Plant. After her tour of the facility, she and the plaintiff conversed in his office.

According to plaintiff, they mostly talked business, but they also talked about their families. Plaintiff claims that Mooring became upset talking about her divorce. To console her, plaintiff claims he walked around his desk, lifted up her elbows, and hugged her. Plaintiff claims Mooring stated, "what would your wife think," and pushed him away.

On July 12, 2001, Ken Myers, the City's Safety Service Director, received a phone call from Mooring's supervisor in Atlanta. Mooring was alleging plaintiff sexually assaulted her. Mooring's supervisor had already contacted the Fremont police.

According to Mooring, after plaintiff and she talked about their children, plaintiff pulled Mooring out of her chair, grabbing her near the elbows, and pulled her into his body. Plaintiff proceeded to rub and caress Mooring's back. Plaintiff then attempted to kiss Mooring. Mooring placed her face in plaintiff's shoulder to refuse his kiss. He then kissed her cheek and nibbled her ear. Mooring also alleges plaintiff pressed his erection on her leg. Mooring claims she repeatedly told plaintiff, "no, please don't do this." Finally, Mooring placed her hand over plaintiff's mouth and said, "what would your wife think." Plaintiff then let go and apologized. Mooring told plaintiff, "I needed a hug, but not that way."

On July 16, 2001, Myers informed plaintiff that he was accused of sexual harassment. Myers told plaintiff to go to the police station and meet with Captain Sam Derr.

At the police station, Myers and Captain Derr informed plaintiff there were two investigations into the alleged incident: a police investigation for purposes of possible prosecution and an administrative investigation relating to plaintiff's continued employment. Derr read plaintiff his Miranda warnings, and plaintiff chose to consult his attorney before any more questioning.

As of July 17, 2001, Myers placed plaintiff on administrative leave through the time an investigation into the charges against him could be conducted.

On July 23, 2001, plaintiff and his lawyer met with Myers and Bob Hart, the Fremont Law Director. Plaintiff refused to talk about the July 11, 2001, incident. Instead, plaintiff submitted a letter that neither admitted nor denied Mooring's allegations.

After the July 23 meeting, plaintiff refused a polygraph test offered by the City.

Hart and Myers conducted the administrative investigation for the City, On August 1, 2001, they flew to Atlanta and taped an interview with Mooring.

On August 6, 2001, plaintiff met with Myers, Hart, and Mayor Overmyer. Like the July 23 meeting, plaintiff refused to talk about the incident.

Later that day, Hart hand delivered plaintiff's termination letter to plaintiff's attorney. It stated: "I regret this action, however, a thorough investigation of an incident on July 11, 2001 at the Water Treatment Plant and your failure to fully cooperate in that regard leaves me no choice."

On August 28, 2001, Hart testified before the grand jury recommending that no charges be filed against plaintiff. Accord-

ing to Hart: "I just didn't think it was necessary because he'd already been terminated and I also didn't think it was good precedent for law in Sandusky County to have a flirtation gone awry become a criminal offense." Hart Dep. 45. As a result, no indictment was returned.

On October 5, 2001, plaintiff requested a name clearing hearing as a result of the manner in which his termination was conducted. On October 11, 2001, Myers denied plaintiff's request, stating:

1. A name clearing hearing is only necessary where stigmatizing information is made public by a public official in connection with an employee's discharge. To date, no such information has been made public by any public official.

   If you have any proof of such information was made public by an City official, please provide it to me and I may reconsider. I say this because I feel reasonably certain that you cannot respond with proof.

   \*    \*    \*    \*    \*    \*

3. Your requests are really moot. I met with you and your client on two (2) different occasions. On at least one of these I told you that, if you had anything that was exculpatory, that you should lay it out. You did nothing. Even though your client was not entitled to a "name clearing hearing," he effectively got one gratis, but nothing with it.

Pl.'s Amended Complaint Ex. G.

On October 31, 2001, plaintiff sent Myers copies of three newspaper articles that plaintiff claimed contained stigmatizing information that was made public by a public official in connection with his discharge. Myers again denied plaintiff's request for a name clearing hearing.

In December, 2001, plaintiff brought this lawsuit claiming 1) defendants deprived him of a liberty interest in his good name in conjunction with his termination; and 2) that he was unlawfully terminated based on his assertion of his Fifth Amendment rights. Pending are cross motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving

party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

Plaintiff claims that defendants violated his civil rights, and they are liable under § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, or custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress ....

To succeed on a § 1983 claim, a plaintiff is required to show a defendant: 1) acted under color of state laws and 2) deprived plaintiff of his or her rights under the United States Constitution. *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir.2002).

### I. Liberty Interest

A plaintiff may prove that he or she was deprived of a right guaranteed by the United States Constitution or its laws by proving he or she was deprived of a liberty interest without due process of law.

*Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination. *Id.* at 573, 92 S.Ct. 2701. When a deprivation of a liberty interest of this kind occurs, the employee must be afforded notice and an opportunity to be heard to refute the charges disseminated against him. *Chilingirian v. Boris,* 882 F.2d 200, 205 (6th Cir.1989) (citing *Roth,* 408 U.S. at 573, 92 S.Ct. 2701). "Thus, when a 'nontenured' employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Id.*

A plaintiff cannot establish a due process violation, however, through defamation alone. *Quinn v. Shirey,* 293 F.3d 315, 319 (6th Cir.2002) (citing *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

The Sixth Circuit has identified five elements that must be satisfied to establish that a plaintiff was deprived of a liberty interest entitling the plaintiff to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Brown v. City of Niota,* 214 F.3d 718, 722–23 (6th Cir.2000) (citing *Ludwig v. Bd. of Trustees,* 123 F.3d 404, 410 (6th Cir.1997)).

"Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one." *Brown,* 214 F.3d at 723. It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process. *Id.* Thus, the public employer deprives an employee of his liberty interest without due process, if on request for a name-clearing hearing, the employee is denied. *Id.*

Before a plaintiff may assert deprivation of a liberty interest, he or she must, however, show that he or she requested a name-clearing hearing and was denied a hearing. *Quinn,* 293 F.3d at 322.

### 1. Stigmatizing Statements Made in Conjunction With Termination of Employment

■ As the Supreme Court stated in *Roth,* an individual's liberty interest would be impaired where the government's action injured him in one of two ways: either where it injured his "good name, reputation, honor or integrity" or where it "imposed upon him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. 2701.

Plaintiff claims that the following stigmatizing statements, combined with his loss of employment, satisfy this element. On August 4, 2001, Derr is quoted in Fremont's *News Messenger* as stating: "(The appraiser) is alleging that Mr. Hade made improper advances … at the water filtration plant in Fremont." On August 7, 2001, in an article in the *News Messenger* under the heading "Mayor Fires City Water Boss," the Fremont police department is said to be investigating a "report of a sexually re-lated incident at the plant." Mayor Overmyer is quoted as stating: "Mr. Hade was terminated from his employment with the city of Fremont effective (Monday) based upon what we believe happened in that incident." The article also cites plaintiff's termination letter and the fact that plaintiff was also fired because he did not "fully cooperate" in the investigation. As to the criminal investigation, Derr is quoted as stating: "He allegedly performed or did certain acts that have led up to this investigation that are of the sexual nature. As to what those actions constitute we would rather leave up to the prosecutor to decide." The article went on to discuss what would happen if misdemeanor or felony charges were brought against plaintiff.

On August 7, 2001, an article in *The Toledo Blade* stated that Overmyer terminated plaintiff "because of a city investigation into the allegation and Mr. Hade's unwillingness to explain what happened."

Defendants first argue that the published statements are not false; therefore, by definition, they cannot be stigmatizing.

The "stigmatizing" element of a name clearing charge is used interchangeably with "defamatory." As the court in *Rosenstein v. Dallas,* 876 F.2d 392, 395 n. 2 (5th Cir.1989), explained:

Settling on a term that adequately characterizes the type of charges which give rise to a liberty interest under *Roth* has been a source of much difficulty for this court; our choice of the term "defamatory" is deliberate. In the past we have usually employed the term "stigmatizing." Stigma, however, has not proven to be a concept capable of much precision. At times we have attempted to supplement "stigmatizing" with the no-

tion of "a badge of infamy." . . . We do believe that the term "stigmatize" has proven unnecessarily confusing, but by characterizing the type of charge that triggers a liberty interest as "defamatory," we in no way change the law. The meaning of "defamatory" is well settled and familiar; it better addresses the range of meanings intended by the Supreme Court; and it provides better direction for trial courts. Furthermore, our use of the term "defamatory" in this manner is hardly unprecedented. *See Owen v. City of Independence,* 445 U.S. at 633 n. 13, 100 S.Ct. 1398; *Paul v. Davis,* 424 U.S. at 709, 96 S.Ct. 1155; *Lyons v. Barrett,* 851 F.2d 406, 410 (D.C.Cir.1988); *Fleisher v. City of Signal Hill,* 829 F.2d 1491, 1495 (9th Cir. 1987) . . . . (citations omitted).

It is well-settled that a communication may be defamatory because of what is either expressly stated *or* because of what the statement implies. As the Supreme Court explained in *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 n. 7, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990):

> [T]he issue of falsity relates to the *defamatory* facts implied by a statement. For instance, the statement, "I think Jones lied," may be provable as false on two levels. First, that the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied. It is, of course, the second level of falsity which would ordinarily serve as the basis for a defamation action, though falsity at the first level may serve to establish malice where that is required for recovery.

*See also Strasburger v. Bd. of Educ.,* 143 F.3d 351, 356, 356 (7th Cir.1998) ("The first element [for a liberty cause of action] requires the employee to show that a public official made defamatory statements about him. These statements must be false assertions of fact. True but stigmatizing statements that preclude further government employment do not support this type of claim. Nor do statements of opinion, even stigmatizing ones, if they do not *imply false facts.*") (emphasis added).

While it may be true that plaintiff was criminally investigated and that he was terminated because Mayor Overmyer believed the allegations against plaintiff, the statements combined with his termination give the impression that plaintiff committed an act of sexual misconduct—possibly criminal in nature. Thus, because plaintiff claims the allegations against him are false, his firing implicated a liberty interest in his reputation such that he is entitled to a name clearing hearing.

Defendants next argue that the public statements are not stigmatizing. Clearly, however, statements alleging that a public employee engaged in certain unspecified conduct involving sexual impropriety or improper advances are stigmatizing. *See e.g., Brandt v. Bd. of Coop. Educ. Servs., Third Supervisory Dist.,* 820 F.2d 41, 43 (2d Cir.1987) (in action in which teacher terminated due to his alleged sexual misconduct involving autistic students, court recognized that "charges that the employee is guilty of dishonesty or immorality are stigmatizing"); *Doe v. Village of Oak Park,* 863 F.Supp. 797, 801 (N.D.Ill.1994) ("Creating a false impression of criminal activity in conjunction with the termination of a public employee may state a cause of action under §§ 1983, since such impressions can damage one's 'good name, reputation, honor or integrity, or impose a stigma that effectively forecloses' future employment.") (citing *Roth,* 408 U.S. at 573, 92 S.Ct. 2701).

Third, defendants argue that Overmyer's statement cannot be stigmatizing because it was merely Overmyer's belief or an expression of his opinion regarding the

allegations against plaintiff. *See e.g., Strasburger,* 143 F.3d at 356 (finding that school board member's "expression of opinion" about the termination of a teacher is not a "false assertion of fact" and does not "imply a falsehood" so plaintiff did not satisfy the "elements of the employment/defamation cause of action").

As the Supreme Court held in *Milkovich,* 497 U.S. at 18, 110 S.Ct. 2695, however:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.' "

Because the City released information that plaintiff was being criminally investigated and then discharged plaintiff in relation to the incident, the public could easily conclude that plaintiff was terminated because he committed acts of sexual misconduct. Thus, if plaintiff did not sexually harass Mooring, the statements imply a false assertion of fact. Couching the statement in Overmyer's "belief" does not dispel the implication.

■ Finally, defendants argue that plaintiff cannot meet the first element because plaintiff was not deprived of future employment opportunities—he retained a similar position with the Village of Bettsville.

Defendants are correct in that injury to reputation by itself is not a liberty interest protected under the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. at 709–10, 96 S.Ct. 1155. As the Supreme Court explained in *Paul:* "it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment." *Id.* at 710, 96 S.Ct. 1155.

Thus, proof of an injury combined with termination from a government job is sufficient to satisfy this first element of a name clearing charge. Because plaintiff lost his government job, he does not have to prove loss of any future job opportunities. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1106 (D.C.Cir.1985) ("The *Paul* court, however, clearly indicated that the "other governmental action," ... also includes a loss of government employment or a foreclosure of future government employment opportunities.").

### 2. Statements Involve More Than Alleged Improper or Inadequate Performance, Incompetence, Neglect of Duty, or Malfeasance

■ As the Sixth Circuit explained in *Chilingirian,* a "charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." 882 F.2d at 200–05 n. 8. Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might seriously damage his standing and association in his community" or that might impose "on him a stig-

ma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities." *Ludwig*, 123 F.3d at 410 (quoting *Roth*, 408 U.S. at 573, 92 S.Ct. 2701). The statement cannot involve merely alleged improper or adequate performance, in competence, neglect of duty, or malfeasance. *Ludwig*, at 123 F.3d at 410.

Clearly, public statements that plaintiff was terminated from employment due to alleged sexual incidents that the prosecutor is investigating for potential criminal charges are likely to damage plaintiff's standing in the community and foreclose future employment. Thus, the City has alleged more than mere improper or inadequate performance, incompetence, neglect of duty, or malfeasance.

### 3. Stigmatizing Statements Made to the Public

■ The Supreme Court set forth the "public disclosure" requirement in *Bishop*, 426 U.S. at 348, 96 S.Ct. 2074. The purpose of the requirement is to limit a constitutional claim to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities. *Brandt*, 820 F.2d at 44.

Stigmatizing statements about plaintiff were made public through two newspapers, the *News Messenger* and *The Toledo Blade*. This satisfies the public disclosure requirement, as the statements were widely disseminated.

### 4. Plaintiff Claims the Statements Against Him Are False

■ The hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person an opportunity to clear his name." *Codd*, 429 U.S. at 628, 97 S.Ct. 882. If he or she does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him. *Id.*

Here, plaintiff has alleged that the information published by Overmyer and Derr, on behalf of the City, was "substantially false." Pl.'s Amended Complt. ¶ 26. Additionally, plaintiff testified that he did not attempt to kiss Mooring, he did not nibble on her ear, and he did not press against her leg with an erection. He claims he only hugged her because he thought she needed consoling. Pl.'s Dep. 79–80.

Defendants argue that plaintiff's claim must fail because the statements made by Overmyer and Derr were not false. Plaintiff was in fact being criminally investigated, and Mayor Overmyer believed the allegations when plaintiff was terminated. Therefore, plaintiff cannot demonstrate that the statements are false.

As noted above, however, "the issue of falsity relates to the *defamatory* facts implied by a statement. For instance, the statement, 'I think Jones lied,' may be provable as false on two levels. First, that the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied." *Milkovich*, 497 U.S. at 20 n. 7, 110 S.Ct. 2695.

Plaintiff claims that Overmyer's and Derr's statements were false on the second level; thus, he has proven this element.

Additionally, plaintiff only has to allege the statements are false, not prove they are false. *See Brandt*, 820 F.2d at 43 ("The Supreme Court has required only that a plaintiff raise the issue of falsity regarding the stigmatizing charges—not prove it—in order to establish a right to a name-clearing hearing.").

Requiring the plaintiff to prove the charges are false before he can successfully bring a claim for a deprivation of liberty interest is overburdening and illogical. It is overburdening because it would require a discharged employee to have proved in some other forum that the content of the reputation damaging charges was false prior to bringing an action for deprivation of liberty interest. It is illogical because if the employee has already established that the charges against him were false he would have no need to establish that he had been deprived of a liberty interest and no need of the consequent remedy of a name-clearing hearing The entire purpose of a name-clearing hearing is to afford the aggrieved employee an "opportunity to be heard to refute the charges disseminated against him." *Ludwig,* 123 F.3d at 410.

### 5. Public Dissemination Was Voluntary

■ Where a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name. *Burkhart v. Randles,* 764 F.2d 1196, 1201 (6th Cir.1985).

When the defendant's reasons for terminated are publicly disseminated by a requirement of law, however, the Sixth Circuit has ruled that defendants cannot be said to have voluntarily disseminated the information. *Kendall v. Bd. of Educ.,* 627 F.2d 1, 6 (6th Cir.1980) In *Kendall,* a teacher was discharged for her use of corporal punishment on a kindergarten student and failing to report the incident. The episode generated media coverage. The court found, however, that the defendant, the Board of Education, did not make the charges public outside of the tenure hearing for a colleague of the plain-

tiff and plaintiff's state criminal and civil proceedings. Thus, "[b]ecause the Board was required to make its charges public in these proceedings, it [did] not voluntarily disseminated the allegedly false information about [plaintiff]." *Id.*

In this case, defendants claim that because plaintiff's termination letter and the initial police incident report were public records and because a news reporter obtained these records under the Ohio Public Records Act, O.R.C. §§ 149,43 *et seq.,* the disclosure of the documents were required by law and therefore not voluntary.

Plaintiff's termination letter and the initial police incident report, however, do not state the nature of the accusations against the plaintiff. The allegations of sexual misconduct came from interviews Overmyer and Derr made with the news reporter.

Nonetheless, defendants argue that any statements that went beyond the substance of the termination letter should not be labeled as voluntary because City officials have a civic duty to keep the citizenry informed.

The statements that plaintiff was being investigated for unspecified sexual conduct and that he was terminated because the Mayor believed those allegations, however, were not required by law. Therefore, the statements were voluntary. As the Fifth Circuit concluded in *Rosenstein,* 876 F.2d at 395, "public officials do not act improperly in publicly disclosing charges against discharged employees, but they must thereafter afford procedural due process to the person charged."

The procedure due plaintiff is the opportunity to clear his name. Plaintiff's motion for summary judgment is hereby granted on this claim, and defendants' motion is hereby denied.[1]

1. Defendants also argue that plaintiff was already afforded a name-clearing hearing. De-

## II. Fifth Amendment

■ The Fifth Amendment provides that no person, "shall be compelled in any criminal case to be a witness against himself." The Amendment not only protects the individual against being involuntarily called as a witness against himself or herself in a criminal prosecution, "but also privileges him [or her] not to answer official questions put to him in any other proceeding, civil, or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

It is also well-settled that states have a strong and legitimate interest in maintaining the integrity of its civil service. Immunity is required, therefore, if there is to be "rational accommodation between the imperatives of the privilege and the legitimate demands of the government to compel citizens to testify." *Kastigar v. United States,* 406 U.S. 441, 446, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

Only after giving adequate immunity may the State "insist that employees either answer questions under oath about the performance of their job or suffer the loss of employment." *Lefkowitz,* 414 U.S. at 84, 94 S.Ct. 316. As the Court concluded in *Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), "government cannot penalize assertion of the constitutional privilege against self-incrimination by imposing sanctions to compel testimony which has not been immunized." *See also Sanitation Men v. Sanitation Comm'r,* 392 U.S. 280, 284, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (noting that the state cannot present employees with "a choice between surrendering their constitutional rights or their jobs").

Plaintiff argues that he was discharged for invoking his right to remain silent, and, because he was not given immunity during the administrative investigation, his Fifth Amendment rights were violated. Defendants argue that plaintiff was told at the outset that the criminal and administrative investigations were separate and distinct. Therefore, plaintiff knew that nothing he said during the administrative investigation would be used against him in whatever criminal proceeding might follow.

Defendants' statement to plaintiff that the criminal and administrative investigations were separate and distinct, however, is not the equivalent of immunity. Thus, because plaintiff was not given immunity when he asserted his Fifth Amendment rights, his assertion of those rights could not lead to the loss of his job. At the time of the administrative investigation, there was a clear risk of possible criminal prosecution, and, absent immunity, there was no enforceable agreement that plaintiff's answers would not be used against him.

■ Proving that plaintiff engaged in constitutional conduct is not enough, however, for a wrongful discharge claim. Plaintiff must also prove the reason for his termination was the exercise of his Fifth Amendment right.

In *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held that a public employee could not be

---

fendants argue that plaintiff had the opportunity to tell his version of the incident at the two meetings with City officials, but he chose not to provide any explanation. While it is true that a name clearing hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid," *Chilingirian,* 882 F.2d at 206, plaintiff's meetings with City officials cannot be labeled as name clearing hearings. At the time of the meetings, plaintiff was the subject of a criminal investigation, and the August 7, 2001, newspaper articles had not even been disseminated.

discharged solely for engaging in constitutionally protected conduct. The consideration of constitutionally protected conduct, however, would not violate an employee's constitutional rights where the employer could show that it would have reached the same decision even if the employee had not engaged in constitutionally protected conduct. *Id.* at 287, 97 S.Ct. 568. The Court explained:

> Initially, ...the burden was properly placed upon the respondent [plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" -or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone one to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's re-employment even in the absence of the protected conduct.

*Id.*

Here, plaintiff's constitutionally protected conduct was his refusal to speak with City officials during the administrative investigation. Plaintiff has demonstrated that it was at least a "substantial" or "motivating factor" in his termination. Plain-

tiff's termination letter states: "a thorough investigation of an incident on July 11, 2001 at the Water Treatment Plant and your failure to fully cooperate in that regard leaves me no choice." Mayor Overmyer testified that plaintiff's "failure to fully cooperate" meant plaintiff's not explaining himself at the two meeting with City officials and not taking the polygraph. Overmyer Dep. at 58–60.

Defendants argue that plaintiff was discharged, at least in part, because defendants' investigation into the July 11, 2001, incident revealed that plaintiff may have engaged in sexually harassing conduct. Their investigation included a trip to Atlanta to interview Mooring and an interview with plaintiff's secretary.

Defendants have not proven that, by a preponderance of the evidence, plaintiff would have been discharged even if he did not invoke his Fifth Amendment right. Defendants have shown, however, that City officials had mixed motives in terminating plaintiff—their independent investigation and plaintiff's refusal to rebut the allegations Therefore, a question of fact remains as to whether defendants would have made the same termination decision regardless of whether plaintiff exercised his Fifth Amendment rights.[2]

---

2. Defendants also argue there was no Fifth Amendment violation because plaintiff waived his Fifth Amendment right by not expressly asserting the right during the administrative investigation and by giving City officials the written statement at the July 23, 2001, meeting, which lacked an overt denial of the alleged misconduct.

The Supreme Court has held that the Fifth Amendment privilege can be waived or lost by a claimant's failure to assert the privilege in a timely fashion. *Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). Previously, the Supreme Court stated that the privilege "must be deemed waived if not in some manner fairly brought to the attention of the tribunal which mush pass

upon it." *Vajtauer v. Comm'r of Immigration,* 273 U.S. 103, 113, 47 S.Ct. 302, 71 L.Ed. 560 (1927).

As the Supreme Court explained in *Quinn v. United States,* 349 U.S. 155, 162–64, 75 S.Ct. 668, 99 L.Ed. 964 (1955):

> It is agreed by all that a claim of the privilege does not require any special combination of words. Plainly a witness need not have the skill of a lawyer to invoke the protection of the Self–Incrimination Clause. If an objection to a question is made in any language that a [questioner] may reasonably be expected to understand as an attempt to invoke the privilege, it must be respected ...

Plaintiff's and defendants' motions for summary judgment are therefore denied as to the Fifth Amendment claim.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Plaintiff's motion for summary judgment be, and hereby is, granted as to the Fourteenth Amendment liberty interest claim and denied as to the Fifth Amendment claim.

2. Defendants' motion for summary judgment be, and hereby is, denied.

.... But the fact that a witness expresses his intention in vague terms is immaterial so long as the claim is sufficiently definite to apprise the [questioner] of his intention. As everyone agrees, no ritualistic formula is necessary in order to invoke the privilege. In this case, there is no dispute City officials knew plaintiff was subject to a contemporaneous criminal investigation. Defendants cannot seriously claim they did not know plaintiff was not answering their questions because he was he was afraid he might incriminate himself.